THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEAN HERMAN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>SCIPLAY CORPORATION and SCIPLAY GAMES, LLC,<br><br>              Defendants. | No. 2:26-cv-00139<br><br>**DEFENDANTS SCIPLAY CORPORATION AND SCIPLAY GAMES, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>NOTE ON MOTION CALENDAR:<br>June 3, 2026 |

DEFENDANTS' MOTION TO COMPEL
ARBITRATION

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................1

I.      SciPlay offers its games subject to its Terms of Service, which include a prominent
        arbitration clause. ..........................................................................................................1

II.     Herman accepted the Terms of Service. .........................................................................3

III.    Herman sues in this court rather than arbitrating. .........................................................6

LEGAL STANDARDS ...............................................................................................................6

ARGUMENT ...............................................................................................................................7

I.      The Court should compel arbitration because Herman agreed to SciPlay's Terms of
        Service, which require arbitrating any claim involving SciPlay. .....................................7

        A.      Herman agreed to the Terms of Service by clicking "Accept!" .......................7

        B.      Herman cannot avoid arbitration by arguing that the Terms of Service are a
                void gambling contract. ....................................................................................10

        C.      The Terms of Service delegate the arbitrability question to the arbitrator. .................11

II.     The Court should stay the case pending arbitration. .....................................................13

CONCLUSION ...........................................................................................................................13

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – i

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

# TABLE OF AUTHORITIES

**CASES**

*Alkutkar v. Bumble, Inc.*,
No. 24-6671, 2025 WL 2925296 (9th Cir. Oct. 15, 2025) ...................................................................7

*Ambrosia v. Blazesoft Ltd.*,
No. 25 C 1723, 2025 WL 2976477* (N.D. Ill. Oct. 21, 2025)............................................................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................................................1

*Augustine v. TLC Resorts Vacation Club, LLC*,
No. 3:18-CV-01120-H-JMA, 2018 WL 3913923 (S.D. Cal. Aug. 16, 2018) .......................................10

*Boatner v. SSPS LLC*,
No. 25 Civ. 3251 (DEH), 2025 WL 3281509 (S.D.N.Y. Nov. 25, 2025) ............................................10

*Boyle v. Sweepsteaks Ltd.*,
No. 8:25-CV-00302-JVS-ADS, 2025 WL 1674480 (C.D. Cal. May 19, 2025)....................................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)..............................................................................................................................10

*Costless Wholesale, Inc. v. Amazon.com Servs. LLC*,
No. SACV 23-01330-CJC (JDEX), 2023 WL 6224825 (C.D. Cal. Sep. 20, 2023).............................8

*Doe v. VGW Malta Ltd.*,
No. 1:23-CV-3226-TWT, 2023 WL 8234650 (N.D. Ga. Nov. 28, 2023)............................................11

*Goggins v. Amazon.com Inc.*,
No. 2:24-CV-00257, 2025 WL 2782872 (W.D. Wash. Sep. 30, 2025) .............................................8, 9

*Hauenstein v. Softwrap Ltd.*,
No. C07-0572MJP, 2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) .................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......................................................................................................................6, 11, 12

*Huynh v. Boom Shakalaka, Inc.*, No. 2:25-cv-08121-HDV-SK, 2026 WL 247880, at *4–5 (C.D.
Cal. Jan. 28, 2026) ...............................................................................................................................10

*Keebaugh v. Warner Bros. Ent., Inc.*,
100 F.4th 1005 (9th Cir. 2024) ............................................................................................................6, 8

*Ligeri v. Amazon.com Servs. LLC*,
No. 2:25-CV-00764-JHC, 2025 WL 2161497 (W.D. Wash. July 30, 2025),
*econsideration denied*, No. 2:25-CV-00764-JHC, 2025 WL 2212595 (W.D. Wash. Aug. 4,
2025) ................................................................................................................................................11, 12

*M.A. Mortenson Co. v. Timberline Software Corp.*,
998 P.2d 305 (Wash. 2000) ....................................................................................................................9

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – ii

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone: 303.592.3100

*M.M. v. Sweepsteakes Ltd.,*
    No. 1:25-cv-11481, 2025 WL 3240413 (D. Mass. Nov. 20, 2025)........................................................10

*M.M. v. VGW US, Inc.,*
    No. 25-cv-10514-DJC, 2026 WL 34452 (D. Mass. Jan. 6, 2026) .......................................................10

*McCallum v. Buckley L., P.C.,*
    No. C24-05222-KKE, 2024 WL 3744440 (W.D. Wash. Aug. 9, 2024) ...................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ..................................................................................................................... 6, 13

*Patrick v. Running Warehouse, LLC,*
    93 F.4th 468 (9th Cir. 2024) .................................................................................................................11

*Reed v. Scientific Games Corp.,*
    No. C18-0565RSL, 2021 WL 2473930 (W.D. Wash. June 17, 2021) .....................................................9

*Rent-A-Ctr. v. Jackson,*
    561 U.S. 63 (2010) ................................................................................................................................6

*Singh v. Adobe Inc.,*
    797 F. Supp. 3d 1038 (N.D. Cal. 2025) .................................................................................................7

*Smith v. Spizzirri*
    601 U.S. 472 (2024).............................................................................................................................13

*Spacil v. Home Away, Inc.,*
    No. 2-19-CV-0098-3GMN-EJY, 2020 WL 184985 (D. Nev. Jan. 13, 2020) .........................................9

*Thompson v. Isagenix Int'l LLC,*
    849 F. App'x 712 (9th Cir. 2021) ..........................................................................................................1

*Wilson v. Huuuge, Inc.,*
    944 F.3d 1212 (9th Cir. 2019) ..........................................................................................................7, 8

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.,*
    497 F. App'x 740 (9th Cir. 2012)........................................................................................................12

*Zoller v. GCA Advisors, LLC,*
    993 F.3d 1198 (9th Cir. 2021) ..............................................................................................................6

**STATUTES**

9 U.S.C. § 2.......................................................................................................................................6

9 U.S.C. § 3................................................................................................................................. 6, 13

9 U.S.C. § 4.......................................................................................................................................6

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – iii

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone: 303.592.3100

## INTRODUCTION

Plaintiff Sean Herman alleges that he played SciPlay's video games during the last three years. Like every other player, Herman accepted SciPlay's Terms of Service, which include an agreement to individually arbitrate all claims involving SciPlay's free-to-play video games. Despite agreeing to individual arbitration, he now brings various state-law claims in this court on behalf of a putative class alleging that SciPlay's games are unlawful gambling.

His underlying claims lack merit. Video games that are free to play and in which nobody can ever win or lose any money are not gambling. And even if they were, the underlying law bars these types of claims. But the merits are an issue for another day and another decisionmaker: Herman's claims belong in arbitration, not in this Court.

The Federal Arbitration Act ("FAA") embodies "a national policy favoring arbitration" and requires courts to enforce arbitration agreements "according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011) (cleaned up). The FAA's liberal pro-arbitration policy controls here. And it makes this a straightforward motion. After opening one of SciPlay's games, Herman—like all players—received a pop up that took up his entire screen and told him that, by tapping the "Accept!" button, he would agree to SciPlay's Terms of Service. Herman then—like all players—clicked "Accept!" to manifest his assent to those Terms of Service.

Under the Terms of Service, Herman agreed to arbitrate all disputes regarding SciPlay's games on an individual basis, to delegate all arbitrability questions to an arbitrator, and to waive his right to bring or participate in a class action. The Court should therefore compel arbitration and stay the case so that an arbitrator may decide the dispute, as required by the parties' contract.

## BACKGROUND

**I.      SciPlay offers its games subject to its Terms of Service, which include a prominent arbitration clause.**

SciPlay is a social casino company that offers free-to-play casino-themed video games. Declaration of Cameron Lee ("Lee Decl.") ¶ 3.[1] These games are known as social casino games

---

[1] "A court may consider evidence outside the pleadings when ruling on . . . a motion to compel arbitration." *Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021).

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 1

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

because players only play them for fun and can never win any money from them.

To play any SciPlay game, every user must first accept SciPlay's Terms of Service. *Id.* ¶¶ 5, 12–13.[2] The Terms of Service govern using "the Platform," which includes all SciPlay's "games, websites, and apps." *Id.*, Ex. B ("2024 Terms of Service"), intro (capitalization changed). The Terms of Service warn users to read them "carefully before using this Platform." *Id.* The next paragraph then explains in bold font that the Terms of Service include an arbitration agreement:

> **Your agreement to these Terms includes your agreement to individually arbitrate any and all claims arising out of or in connection with these Terms or the Platform pursuant to the Federal Arbitration Act and subject to the terms below (Section 19, "Agreement to Arbitrate and Class Action Waiver").**

*Id.* The full arbitration agreement (Section 19) then has a bold heading titled "**Agreement to Arbitrate and Class Action Waiver**." *Id.* § 19.

This mandatory arbitration provision is broad in both temporal and substantive scope. The parties agreed "to binding arbitration, pursuant to the [FAA], of any and all claims (regardless of the date of accrual of such claim) arising out of or in connection with these Terms or the Platform." *Id.* § 19.1. That "agreement covers claims that arose prior to, as well as those that may arise after, the effective date of the Agreement to Arbitrate." *Id.* Either party may submit a dispute to arbitration. *Id.* § 19.3.

The agreement also includes a class-action waiver in bold font and all caps. *Id.* § 19.3; *see also id.* § 19.7. That agreement requires the parties to arbitrate "**only on an individual basis and NOT A CLASS-WIDE BASIS.**" *Id.* § 19.3. Or said just a bit differently, any dispute between a player and SciPlay must "be resolved individually, without resort to any form of class action." *Id.* § 19.7.

The 2024 Terms of Service then say that JAMS will administer the arbitration, and its JAMS Comprehensive Arbitration Rules and Procedures will govern. *Id.* § 19.4. The 2020 Terms of Service

---

[2] SciPlay had two main Terms of Service during the relevant period: the 2020 Terms of Service and the 2024 Terms of Service (which is currently in effect). Lee Decl. ¶ 4. The earlier 2020 Terms of Service is substantially similar to the 2024 Terms of Service, with the only real difference being that it provided for individual arbitration before the American Arbitration Association ("AAA") instead of the Judicial Arbitration and Mediation Services Inc. ("JAMS"). *Compare id.*, Ex. A ("2020 Terms of Service") § 19.3, *with id.*, Ex. B ("2024 Terms of Service") § 19.4. This motion will therefore generally reference the 2024 Terms of Service.

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 2

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone: 303.592.3100

say that the AAA will administer the arbitration under the AAA's Commercial Arbitration Rules. 2020 Terms of Service § 19.3. Both sets of rules delegate to the arbitrator the power to determine arbitrability issues. *See* Ex. 1 ("JAMS Compr. Arb. R.") § 11(b) (granting arbitrator the "authority to determine jurisdiction and arbitrability issues as a preliminary matter," including any "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought"); Ex. 2 ("AAA Commercial Arbitration Rules") R-7(a)–(b) (granting the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" and "the power to determine the existence or validity of a contract of which an arbitration clause forms a part").

Several other provisions are also relevant. The Terms of Service provide that using the Platform shows agreement to the Terms of Service. 2024 Terms of Service intro., §§ 3, 24. And they say that the FAA governs the interpretation and enforcement of the arbitration provision. *Id.* intro., § 19.1.

## II. Herman accepted the Terms of Service.

Enter Plaintiff Sean Herman. He is a Washington resident who alleges that he "created an account on the SciPlay Gambling Platform." Dkt. 1 ("Compl.") ¶¶ 5, 33. He also claims that he has played the games and bought virtual coins "[d]uring the three-year period preceding the filing of this action." *Id.* ¶ 35. For purposes of this motion, SciPlay assumes that Herman played the games and bought virtual coins because he alleged that he did so.

Herman could not have accessed—much less made purchases in—any SciPlay game unless he first affirmatively accepted SciPlay's Terms of Service. Lee Decl. ¶ 16. Since September 2020, SciPlay has required every player to accept its Terms of Service before they could access the games, let alone buy virtual coins in the games. *Id.* ¶¶ 5, 12–13. And when SciPlay updated its Terms of Service in 2024, all players had to accept the updated Terms of Service before they could access the games or buy virtual coins in them. *Id.* ¶ 5.

SciPlay ensured that all players gave their express agreement to the Terms of Service by having pop-up banners display before (1) new players could begin playing its games or (2) existing players

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 3

could continue playing its games. *Id.* ¶ 5. These pop ups displayed immediately when a player opened a game, and they covered the entire screen. *Id.* ¶ 6.

Since September 2020, SciPlay has had three main versions of these pop-up banners. *Id.* ¶ 7. Although the background artwork and greeting change based on the game name, the pop-up banners work the same across the other games. *Id.* Every version explained that the Terms of Service included an arbitration agreement and class-action waiver and that clicking "Accept!" will accept the Terms of Service. *Id.* ¶¶ 8, 10, 12; *id.*, Exs. C–E. The main difference between these different versions was just how the pop ups hyperlinked to the Terms of Service. *See id.*, Exs. C–E. The earlier versions had prominent "Terms of Service" buttons that linked to the Terms of Service. *Id.*, Exs. D–E; Lee Decl. ¶ 11. The current version prominently hyperlinks to the Terms of Service by bolding, underlining, and making brightly colored the words "Terms of Service." *Id.* ¶ 9; *id.*, Ex. C. The below image shows an example of the current pop up:



DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 4



*Id.*, Ex. C.

SciPlay designed the pop ups so that players could not play any game—or buy any virtual coins—unless they first agreed to the Terms of Service by clicking "Accept!" Lee Decl. ¶ 12. The Terms of Service also put existing players on notice that continuing to play the games signified agreement to any revised terms. 2024 Terms of Service § 3; 2020 Terms of Service § 3; *see* Compl. ¶¶ 33–35 (alleging that Herman played the games and bought virtual coins over the last three years).

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 5

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

The Terms of Service have always been easily accessible to players, available online and hyperlinked in the games. Lee Decl. ¶ 14.

### III.    Herman sues in this court rather than arbitrating.

Despite agreeing to the mandatory arbitration provision, Herman filed a putative class action in this Court seeking damages and declaratory relief on behalf of a class of Washington residents who spent money in SciPlay's games. He claims that SciPlay's games violate "Washington's gambling law" even though they are free to play and nobody can ever win or lose any money. Compl. ¶ 4.

SciPlay now moves to compel arbitration and stay the proceedings under 9 U.S.C. §§ 3–4.

## LEGAL STANDARDS

The FAA governs here because it applies to "arbitration agreements in contracts evincing 'a transaction involving commerce.'" *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (quoting 9 U.S.C. § 2). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies "a liberal federal policy favoring arbitration." *Zoller*, 993 F.3d at 1201 (quotations omitted). Because the FAA "places arbitration agreements on an equal footing with other contracts," arbitration remains a creature of contract. *Rent-A-Ctr. v. Jackson*, 561 U.S. 63, 67 (2010).

Before compelling arbitration, courts "apply state-law principles of contract formation." *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (quotations omitted). Courts first ask whether the parties entered into a contractually valid arbitration agreement. *See id.* They then ask whether a court or an arbitrator must decide whether the dispute falls within that agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). When, as here, "the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 69. Yet even when it does not, "the court must order the parties to proceed to arbitration in accordance with the" agreement's terms. *Keebaugh*, 100 F.4th at 1013. In short, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 6

Courts apply the summary-judgment standard to determine "whether an arbitration agreement was formed." *Alkutkar v. Bumble, Inc.*, No. 24-6671, 2025 WL 2925296, at *1 (9th Cir. Oct. 15, 2025) (unpublished). A court may only outright deny a motion to compel arbitration if it finds that "no reasonable trier of fact could find an agreement was made." *Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1044 (N.D. Cal. 2025).

## ARGUMENT

When a valid arbitration agreement exists, a court must order the parties to proceed to arbitration. Herman could not have played or made purchases in the games unless he affirmatively agreed to the Terms by clicking "Accept!" Lee Decl. ¶¶ 5, 12–13, 16. In doing so, Herman agreed to arbitrate all disputes with SciPlay under the JAMS or AAA Rules. The JAMS and AAA Rules, in turn, delegate all arbitrability questions to the arbitrator. The FAA requires the Court to enforce this agreement and compel Herman to arbitrate his claims and stay this proceeding.

**I.      The Court should compel arbitration because Herman agreed to SciPlay's Terms of Service, which require arbitrating any claim involving SciPlay.**

**A.      Herman agreed to the Terms of Service by clicking "Accept!"**

Herman chose to click "Accept!" on SciPlay's Terms of Service. In doing so, he actually or constructively consented to the arbitration clause at issue. Forming a contract under Washington (or Nevada[3]) law requires parties to have "actual or constructive notice" of the contract and then manifest "mutual assent" to it. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). The same rules apply when parties switch from the real world to the virtual one. Parties form agreements over the internet if an offeror who runs a website or app adequately conveys contractual terms and an offeree who uses the website or app adequately conveys his acceptance. *See id.* To determine whether parties have

---

[3] The Terms of Service have a Nevada choice-of-law clause. 2024 Terms of Service § 21; 2020 Terms of Service § 21. The Court looks to "the choice of law rules of the state in which it sits" to determine which law applies. *McCallum v. Buckley L., P.C.*, No. C24-05222-KKE, 2024 WL 3744440, at *2 (W.D. Wash. Aug. 9, 2024). Because Washington law generally enforces contractual choice-of-law provisions and no exception to that rule applies here, Nevada law applies when there is "an actual conflict" between Washington and Nevada law. *Id.* (quotations omitted). Thus, if Herman identifies any actual conflict between Washington and Nevada law, then the Court should apply Nevada law. But because the Court should grant this Motion under both Nevada and Washington law, this Motion generally cites Washington law. *See id.*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 7

formed a contract over the internet, courts classify internet contracts "by the way in which the user purportedly" agrees to "the associated terms." *Keebaugh*, 100 F.4th at 1014 (quotations omitted).

Courts call the relevant contract here a "clickwrap" agreement. In a clickwrap agreement, users "affirmatively assent to the terms of use before they can access the website and its services." *Wilson*, 944 F.3d at 1219. "Courts have routinely found clickwrap agreements enforceable." *Keebaugh*, 100 F.4th at 1014 (quotations omitted); *accord Goggins v. Amazon.com Inc.*, No. 2:24-CV-00257, 2025 WL 2782872, at *5 (W.D. Wash. Sep. 30, 2025) (applying Washington law and explaining that "[c]ourts routinely find" clickwrap agreements enforceable).

Here, Herman accepted SciPlay's Terms of Service (and accompanying arbitration agreement) through a clearly conspicuous clickwrap agreement. When he opened the games, a pop up immediately displayed, covered the entire screen, and prevented him from continuing on to the game. Lee Decl. ¶¶ 6, 12, 16. That pop up informed him to carefully review the Terms of Service, that the Terms of Service include an arbitration agreement and class-action waiver, and that by clicking the "Accept!" button, he would accept the contract. Lee Decl. ¶¶ 7, 12, Exs. C–E. And the pop up consciously hyperlinked to the Terms of Service either through a brightly colored button labeled "Terms of Service" or through in several spots bolding, underlining, and making brightly colored the words "Terms of Service." Lee Decl. ¶¶ 9, 11, Exs. C–E. Herman could not have played or bought virtual coins in the games—as he alleges he did—unless he accepted the Terms by clicking the "Accept!" button. *See* Lee Decl. ¶¶ 5, 12–13, 16; *compare id.* ¶¶ 12–13 (explaining that all users since September 2020 must have accepted the Terms of Service), *with* Compl. ¶ 35 (alleging that Herman played the games and bought virtual coins "[d]uring the three-year period preceding the filing of this action").

The pop-up banner gave proper notice to Herman that he was accepting the Terms of Service. The pop up was conspicuous and clearly notified Herman that the Terms of Service—including the arbitration agreement and class-action waiver—would govern if he clicked the "Accept!" button. Court after court has found that this is more than enough to form a contract under Washington law. *See, e.g., Goggins*, 2025 WL 2782872, at *5 (collecting cases); *Costless Wholesale, Inc. v. Amazon.com Servs. LLC*, No. SACV 23-01330-CJC (JDEX), 2023 WL 6224825, at *3 (C.D. Cal. Sep. 20, 2023) (applying

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 8

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

Washington law and collecting cases on the issue); *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *3 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff manifested his assent "through his 'clicking' the 'I agree' button"). So too with Nevada law. *See, e.g.*, *Spacil v. Home Away, Inc.*, No. 2-19-CV-0098-3GMN-EJY, 2020 WL 184985, at *4 (D. Nev. Jan. 13, 2020) (compelling arbitration when plaintiff clicked on an "Agree & continue button" to the Terms and Conditions with a "hyperlink that, if clicked, would take Plaintiff to the document containing the arbitration agreement").

In applying these principles, another court in this District held that an earlier version of SciPlay's pop up "was very conspicuous—unavoidable, even—and it clearly notified plaintiff that new terms and conditions would govern further use of Jackpot Party Casino if she clicked the 'Accept!' button." *Reed v. Scientific Games Corp.*, No. C18-0565RSL, 2021 WL 2473930, at *3 (W.D. Wash. June 17, 2021). If anything, SciPlay now provides more notice: SciPlay's pop up now tells players that they are agreeing to mandatory arbitration and a class-action waiver. *Compare id.* at *1 (pop up noting that there were "changes to . . . terms of service provisions such as . . . dispute resolution), *with* Lee Decl., Exs. C–E (explaining that "SciPlay's Terms of Service include an 'Agreement to Arbitrate and Class Action Waiver' provision requiring individual arbitration of any dispute"). Thus, here, as in *Reed*, a player who clicked the "Accept!" button "manifested an intention to agree to the terms and conditions offered by" SciPlay. *Reed*, 2021 WL 2473930, at *3.[4]

Seeming to recognize that he accepted SciPlay's mandatory arbitration agreement, Herman tries to shimmy out of it by alleging that he "did not review and was not aware" of any "terms and conditions." Compl. ¶ 37. That does not work. A party's failure "to actually read the agreement" is not a defense to enforcing the contract. *M.A. Mortenson Co. v. Timberline Software Corp.*, 998 P.2d 305, 313 (Wash. 2000) (en banc). After Herman received reasonable notice of the terms, his failure to read or understand the arbitration provision is immaterial. *See Goggins*, 2025 WL 2782872, at *6. The same

---

[4] Despite finding that the plaintiff accepted SciPlay's Terms of Service and formed a contract, *Reed* did not compel her to arbitration because SciPlay rolled out the arbitration agreement *after* the plaintiff had sued. *See id.* at *3 (exercising authority under Rule 23(d) to regulate defendant communications with putative class). But unlike there, Herman accepted the arbitration agreement years *before* suing SciPlay. Thus, there are not the same Rule 23(d) concerns about post-filing communications.

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 9

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone: 303.592.3100

is true under Nevada law: because he accepted the contract, it does not matter whether he "never saw the arbitration term" or "did not understand what arbitration was." *Augustine v. TLC Resorts Vacation Club, LLC*, No. 3:18-CV-01120-H-JMA, 2018 WL 3913923, at *5 (S.D. Cal. Aug. 16, 2018) (applying Nevada law).

> **B.**     **Herman cannot avoid arbitration by arguing that the Terms of Service are a void gambling contract.**

Based on the allegations in his complaint, Herman may try to avoid his arbitration agreement by arguing that the Terms of Service are a void gambling contract under Washington law. *See* Compl. ¶¶ 38–39 (alleging that "Plaintiff's contract with Defendants . . . is void" because "the sole purpose of the contract was to facilitate [] unlawful gambling activities"). That argument trips out of the gate. Because an arbitration agreement is severable from the rest of the contract, a party cannot avoid an arbitration agreement by challenging "the contract as a whole" as void. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). An argument that the contract is void as an illegal gambling contract is just the sort of challenge to a contract that *Buckeye* held was inadequate to nullify an arbitration agreement. *Id.* This type of challenge is for "an arbitrator, not a court." *Id.* at 446.

Recognizing this rule, courts across the country have held that plaintiffs cannot avoid their arbitration agreements with casino-themed video game companies by alleging that the terms of service are void gambling contracts. *See, e.g.*, *Huynh v. Boom Shakalaka, Inc.*, No. 2:25-cv-08121-HDV-SK, 2026 WL 247880, at *4–*5 (C.D. Cal. Jan. 28, 2026) (rejecting argument that arbitration agreement was void based on "the only consideration [being] access to an illegal gambling platform" because *Buckeye* is "dispositive" and requires that "the arbitrator" decide the issue "in the first instance"); *Boyle v. Sweepsteaks Ltd.*, No. 8:25-CV-00302-JVS-ADS, 2025 WL 1674480, at *5 (C.D. Cal. May 19, 2025) (similar); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *4 (D. Mass. Jan. 6, 2026) (similar); *M.M. v. Sweepsteakes Ltd.*, No. 1:25-cv-11481, 2025 WL 3240413, at *1–*2 (D. Mass. Nov. 20, 2025) (similar); *Boatner v. SSPS LLC*, No. 25 Civ. 3251 (DEH), 2025 WL 3281509, at *3 (S.D.N.Y. Nov. 25, 2025) (similar); *Ambrosia v. Blazesoft Ltd.*, No. 25 C 1723, 2025 WL 2976477, at *4–*5 (N.D. Ill. Oct. 21, 2025) (similar); *Doe v. VGW Malta Ltd.*, No. 1:23-CV-3226-TWT, 2023 WL 8234650, at

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 10

*3 (N.D. Ga. Nov. 28, 2023) (similar). This Court should do the same here.

### C.      The Terms of Service delegate the arbitrability question to the arbitrator.

Per the Terms of Service, the arbitrator must decide whether Herman's claim is arbitrable. The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," such as whether their agreement covers a particular controversy. *Henry Schein, Inc.*, 586 U.S. at 65. Delegating arbitrability questions to the arbitrator precludes courts from resolving any threshold arbitrability disputes. *Id.* One way that parties can delegate arbitrability questions to the arbitrator is by incorporating "an arbitrator's arbitration rules," including JAMS or AAA "rules by reference." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480–81 (9th Cir. 2024); *accord Ligeri v. Amazon.com Servs. LLC*, No. 2:25-CV-00764-JHC, 2025 WL 2161497, at *7 (W.D. Wash. July 30, 2025), *reconsideration denied,* No. 2:25-CV-00764-JHC, 2025 WL 2212595 (W.D. Wash. Aug. 4, 2025).

Here, the parties did just that: the 2020 and 2024 Terms of Service, respectively, provide that the AAA and JAMS Rules will govern the arbitration. 2020 Terms of Service § 19.3; 2024 Terms of Service § 19.4. Both sets of rules delegate to the arbitrator the power to determine arbitrability issues. *See* JAMS Compr. Arb. R. § 11(b) (granting arbitrator the "authority to determine jurisdiction and arbitrability issues as a preliminary matter," including any "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration"); AAA Commercial Arbitration Rules R-7(a)–(b) (granting the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" and "the power to determine the existence or validity of a contract of which an arbitration clause forms a part"). The incorporation of the JAMS or the AAA rules alone establishes that the parties agreed "to arbitrate arbitrability." *Patrick*, 93 F.4th at 481; *see id.* (holding that the parties agreed to arbitrate arbitrability when the agreement required arbitration "pursuant to the commercial arbitration rules and procedures of JAMS, Inc." (cleaned up)); *Ligeri*, 2025 WL 2161497, at *7 ("The BSA's incorporation of the AAA's rules constitutes clear and unmistakable evidence that the parties intended to delegate the arbitrability question to an arbitrator." (quotations omitted)).

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 11

**Bartlit Beck LLP**
1801 Wewatta St, Ste 1200
Denver, CO 8020
Phone:  303.592.3100

A plain reading of the Terms of Service confirms this intention. Under both the 2020 and 2024 Terms of Service, the parties agreed to arbitrate "**any and all** claims (regardless of the date of accrual of such claim) ***arising out of or in connection with*** these Terms of Service or the Platform." 2020 Terms of Service § 19 (emphasis added); 2024 Terms of Service § 19.1 (emphasis added). Provisions such as this count as a delegation clause because they clearly and unmistakably show that the parties agreed to arbitrate issues of arbitrability. *See, e.g.*, *Ligeri*, 2025 WL 2161497, at *7 (arbitration provision saying "that the parties agree to arbitrate any 'dispute' or 'claim' that relates 'in any way' to 'this Agreement' or 'your use of the Services' . . . necessarily includes the enforceability of the arbitration agreement"); *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (finding that parties showed their "intent to have an arbitrator decide the question of arbitrability" by including an arbitration provision that said "any dispute, controversy or claim arising from or relating to this Agreement shall be submitted to and determined by binding arbitration" (cleaned up)).

By including a delegation clause and incorporating the AAA or JAMS Rules, the parties showed a clear and unmistakable decision to delegate arbitrability issues to the arbitrator. This means that the Court's work is done. It must compel arbitration. *See Henry Schein, Inc.*, 586 U.S. at 68 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.").

Yet even if the parties had not delegated the arbitrability question to the arbitrator, Herman's claims are clearly within the arbitration agreement's scope. Again, the arbitration agreement covers "**any and all** claims (regardless of the date of accrual of such claim) ***arising out of or in connection with*** these Terms of Service or the Platform." 2024 Terms of Service § 19.1 (emphasis added); 2020 Terms of Service § 19 (emphasis added). The "Platform" includes all SciPlay's "games, websites, and apps." *Id.*, intro. (capitalization changed). Every claim falls under what Herman agreed to arbitrate. All Herman's claims arise out of, or are connected with, SciPlay's games: the crux of the dispute is his (incorrect) claim that SciPlay's "mobile apps" violate "Washington's gambling law" and consumer-protection laws by allowing consumers to buy virtual coins. Compl. ¶¶ 1, 3–4; *see also, e.g.*, *id.* ¶¶ 50–55, 65–68. So both claims fall under what Herman agreed to arbitrate. And even if there were any

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 12

doubt about that straightforward reading, that doubt "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

## II.   The Court should stay the case pending arbitration.

Once the Court has found that a party must submit his dispute to arbitration, the FAA commands that "the court in which such suit is pending . . . shall on application of one of the parties stay" the case. 9 U.S.C. § 3. SciPlay requests a stay, so the FAA "requires [the] court to stay the proceeding." *Smith v. Spizzirri,* 601 U.S. 472, 476 (2024).

### CONCLUSION

Herman claims that he played SciPlay's games, which means that he chose to accept SciPlay's Terms of Service. That contract requires him to arbitrate any claim against SciPlay and delegates arbitrability questions to the arbitrator. For these and all the other reasons given, the Court should grant SciPlay's motion to compel arbitration and stay the case pending arbitration.

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 13

I certify that this memorandum contains 4,591 words, in compliance with the Local Civil Rules.

DATED: March 30, 2026

By: */s/ Eric F. Dement*
Daniel C. Taylor (Admitted *Pro Hac Vice*)
Eric F. Dement (Admitted *Pro Hac Vice*)
Bartlit Beck LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Telephone: 303.592.3100
Facsimile: 303.592.3140
daniel.taylor@bartlitbeck.com
eric.dement@bartlitbeck.com

Steven W. Fogg, WSBA No. 23528
Mark Rutherford, WSBA No. 57519
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, WA  98104
Phone: (206) 625-8600
Fax: (206) 625-0900
sfogg@corrcronin.com
mrutherford@corrcronin.com

*Attorneys for Defendants SciPlay Corporation and SciPlay Games, LLC*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION – 14